**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 1:20-cr-00094-TWP-TAB-2 |
| JEREMY GIBSON, | ) ) ) |
| Defendant. | ) ) ) ) |

**ENTRY ON DEFENDANT GIBSON'S MOTION TO SEVER**

This matter is before the Court on Defendant Jeremy Gibson's ("Gibson") Motion to Sever and Request for Hearing. (Filing No. 55.) Gibson seeks a severance of his trial from the other Defendants in this case, Joseph Chase Winkle ("Winkle") and Joseph Krejsa ("Krejsa"). For the reasons explained below, Gibson's Motion to Sever and Request for Hearing is **denied**.

### I. PROCEDURAL BACKGROUND

On March 11, 2020, a federal grand jury returned a twelve-count Indictment arising from five separate incidents in which Muncie Police Department ("MPD") officers allegedly used excessive force and/or wrote false reports about those uses of force. Winkle and Gibson were employed as officers with MPD and Krejsa was a sergeant of MPD. The lead counts (One, Two, Three, and Four) involve the conduct of all three Defendants in connection with the arrest of L.G. on August 9, 2018. Specifically, during the arrest of L.G., Winkle is charged with using his knee to strike L.G.'s head and neck, and Gibson is charged with stomping on and using knee strikes against L.G.'s head, all without legal justification. Count One alleges that Winkle used unreasonable force during the arrest of L.G., in violation 18 U.S.C. § 242. Count Two alleges

that Gibson used unreasonable force during the arrest of L.G., in violation 18 U.S.C. § 242.  Counts Three and Four allege that Winkle and Krejsa, respectively, wrote false reports about this incident, in violation of 18 U.S.C. § 1519.

Counts Five through Seven allege that on June 5, 2018, Winkle used unreasonable force during the arrest of N.B. by kicking and striking N.B. in the head, and that he and Krejsa then wrote false reports about the incident.  Counts Eight and Nine allege that on March 27, 2018, Winkle used unreasonable force during the arrest of I.P. by kicking I.P. in the head, and then writing a false report regarding the incident.  Count Ten alleges that on May 22, 2018, Winkle wrote a false report concerning his arrest of D.E.  Finally, Counts Eleven and Twelve allege that on February 17, 2019, Winkle used unreasonable force during the arrest of B.B. by punching and knee-striking B.B., and then wrote a false report about the incident.

On October 26, 2018, Gibson filed the instant motion to sever his trial from the trial of his two co-defendants.  ([Filing No. 55](Filing No. 55).)  Gibson seeks severance because he is charged in only one count involving one brief incident, and significantly, he is not charged with conspiring with his co-defendants.  *Id*. at 1.  Gibson argues the co-defendants' behaviors in the other 11 counts is completely irrelevant to the question of whether he used unreasonable force related to the arrest of L.G.  *Id.*  The Government filed a Response in opposition on September 23, 2020 ([Filing No. 58](Filing No. 58)).  On September 25, 2020, Gibson file a reply ([Filing No. 59](Filing No. 59)).

## II.  LEGAL STANDARD

Federal Rule of Criminal Procedure 8(b) ("Rule 8(b)") provides for the joinder of defendants "if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses."  The district court should grant severance to properly joined defendants "only if there is a serious risk that a joint trial would

compromise a specific trial right of one of the defendants or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539 (1993). The United States Supreme Court has instructed federal courts to interpret the requirements of Rule 8(b) liberally in favor of joinder. *Id.* at 537. Rule 8(b) is designed to promote judicial economy and efficiency and to avoid a multiplicity of trials, but only so long as these objectives can be achieved without substantial prejudice to the right of the defendants to a fair trial. *Id.* at 540.

Federal Rule of Criminal Procedure 14 ("Rule 14") allows the district court to sever a defendant's trial if joinder appears to prejudice the defendant, and the defendant bears the heavy burden of making "'a strong showing of factually specific and compelling prejudice' that will 'mislead or confuse the jury.'" *United States v. Dixon*, 2015 U.S. Dist. LEXIS 65126, at *2 (S.D. Ind. May 19, 2015) (quoting *United States v. Moore*, 917 F.2d 215, 221 (6th Cir. 1990)); *United States v. Davis*, 177 F.3d 552, 558 (6th Cir. 1999) ("defendant seeking severance at trial from co-defendants bears a strong burden and must demonstrate substantial, undue, or compelling prejudice"). The district court should grant severance to properly joined defendants "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro* at 539. That risk is present, the Supreme Court has explained, if: (1) highly prejudicial evidence that is probative of the defendant's guilt is admitted solely against a co-defendant, (2) many defendants are tried together in a complicated case where the defendants have markedly different degrees of culpability, or (3) "essential exculpatory evidence" for one defendant would be admissible in a solo trial but unavailable in a joint trial. *Id*. In such cases, "'less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice.'" *Id*.

To make a showing of undue prejudice, "the defendant must demonstrate the jury's inability to distinguish the evidence relevant to each defendant." *Moore*, 917 F.2d at 221. A defendant is not entitled to severance "merely because he may have a better chance of acquittal in [a] separate trial[]." *Zafiro* at 540. "'Even a showing that two defendants have mutually antagonistic defenses, that is, that the jury's acceptance of one defense precludes any possibility of acquittal for the other defendant, is not sufficient grounds to require a severance unless the defendant also shows prejudice to some specific trial right.'" *United States v. McClurge*, 311 F.3d 866, 871 (7th Cir. 2002) (quoting *United States v. Mietus*, 237 F.3d 866, 873 (7th Cir. 2001). If the defendant is "able to show some potential jury confusion, such confusion must be balanced against society's interest in speedy and efficient trials." *Murr v. United States*, 200 F.3d 895, 904 (6th Cir. 2000).

### III.  DISCUSSION

As an initial matter, the Court determines that a hearing is not necessary as there are no evidentiary disputes and the Motion raises a purely legal question. Gibson argues that severance is warranted because the twelve counts charged in the Indictment arise "from five separate incidents," four of which do not involve him. (Filing No. 55 at 1.) Because the conduct alleged in the Indictment constitutes separate, unrelated acts, Gibson believes he will be unduly prejudiced as the jury may impute evidence from one defendant to another--resulting in "spillover prejudice" from the other, unrelated, counts tried concerning his co-defendants. *Id*. at 5. He argues the evidence disclosed by the Government confirms that his limited involvement and alleged degree of culpability differs significantly from that of his co-defendants, particularly Winkle, who is charged in 9 of the12 counts in the Indictment. *Id*. Gibson points out that there is no allegation of a conspiracy or common scheme, or any contention that he had knowledge of the other charged

conduct. *Id*. Because the evidence against Winkle creates an unacceptably high inference of wrongdoing against him, Gibson argues a cautionary instruction will not suffice. He asserts that he will be prejudiced by a joint trial because the jury will have to consider evidence of crimes committed by his co-defendants, and that the disparity in the weight and character of that evidence is so substantial that a jury will not be able to separate its consideration of that evidence from its determination of Gibson's guilt or innocence. The evidence against his co-defendants creates an unacceptably high inference of wrongdoing against him. Gibson argues a cautionary instruction will not suffice, therefore the Court should either exclude the evidence or sever the trials.

The Government responds that Rule 14(a) does not support severance, because it would defeat the interests of judicial economy and Gibson has not established prejudice. The Government contends the Defendants are properly joined and a joint trial is in the public interest given the significant overlap in the anticipated evidence. The Government argues that the charges against Gibson are intricately interwoven with the charges against his co-defendants in Counts Two, Three and Four. It contends if Gibson were granted a separate trial, several witnesses would have to testify twice, and all of the video and medical exhibits would have to be re-presented in a second trial. In particular, the Government intends to present the following evidence:

> On August 9, 2018, multiple MPD officers, including co-defendants Gibson and Winkle, participated in the arrest of L.G. At the beginning of that arrest, Defendant Winkle used his knee to drop his entire body weight onto the back of L.G.'s head and neck, resulting in multiple fractures to L.G.'s face and wounds that bled profusely; Defendant Winkle then tased L.G. multiple times. After Defendant Winkle dropped his knee on L.G., Defendant Gibson arrived on the scene and stomped on and used two knee strikes to L.G.'s already severely injured face.
> ….
>
> A few days later, Defendant Krejsa wrote a lengthy memo describing the entire incident and reviewing the actions of the officers, including Gibson and Winkle. Krejsa's report contained several false statements and misleadingly suggested that officers initially used minimal levels of force and escalated to deadly force only after exhausting all lower levels.

5

([Filing No. 58 at 4](#)).

The Government concedes that the other four incidents – addressed in Counts Five through Twelve – do not implicate Gibson, and arise from distinct incidents. However, the Government argues there will be no jury confusion or risk of prejudice to Gibson because all of the incidents are recorded in whole or in part on video. The jury will be able to clearly separate its consideration of evidence regarding the co-defendants, from its determination of Gibson's guilt or innocence. Moreover, proper jury instructions can ameliorate potential prejudice from any evidentiary spillover. Further, argues the Government, the Seventh Circuit has rejected "evidentiary spillover" as a basis for severance. *See United States v. Abdelhaq*, 246 F.3d 990, 992 (7th Cir. 2001) ("[A]s a basis for requiring severance, 'evidentiary spillover' has been rejected.").

The Court agrees that the cases cited by Gibson in which severance was granted are distinguishable. In *United States v. DiBernardo*, 880 F.2d 1216, 1226 (11th Cir. 1989), severance was appropriate in order to allow a defendant to present exculpatory testimony at the trial of his two co-defendants, while avoiding self-incrimination in his own trial. In *United States v. Johnson*, 478 F.2d 1129 (5th Cir. 1973), there was no abuse of discretion by denying severance at the pretrial stage, even though the co-defendants' theories of defense were "completely antagonistic." The Circuit court found that the district court should have granted severance once it became clear during trial that the defendant would be unfairly prejudiced by continuing a joint trial. In *United States v. Troutman*, 546 F. Supp. 2d 610, 615-17 (N.D. Ill. 2008), there was a significant disparity in the weight of the evidence between the moving defendant – who was alleged to have participated in a single act of soliciting money and partnership from a real estate developer – and his co-defendants – who were charged with a five-year fraudulent scheme – and where numerous inculpatory statements would likely be admitted against the codefendants. Here, Gibson has not

argued that his defense will be completely antagonistic, that a need to avoid self-incrimination exists, or that numerous inculpatory statements will likely be admitted.

The Court determines that Gibson has not established prejudice that would strip him of a fair trial. For severance under Rule 14(a), a defendant "must be able to show that the denial of severance caused him actual prejudice in that it prevented him from receiving a fair trial." *United States v. Carter*, 695 F.3d 690, 700–701 (7th Cir. 2012). Although the jury will hear evidence that does not apply to Gibson, the Court will instruct the jury to consider only evidence relevant to Count One as applicable to Gibson. *Id*. at 701 (Even if the defendants can show prejudice, that alone may not necessarily suffice for them to prevail; limiting instructions will often cure any risk of prejudice, and tailoring relief from prejudice is within the district court's discretion.) *Id*. at 701.

Despite his argument that he is charged in only one count, and that only a fraction of the evidence at trial pertained to him, Gibson has not identified any prejudicial spillover evidence. *See Dixon* 2015 WL 2400465, at *2-3 (denying motion to sever; finding that any potential "spillover" effect from the relationship between, and incriminating statements made by a co-defendant did not establish prejudice that would deprive the moving defendant of a fair trial); see also *Abdelhaq*, at 992 (7th Cir. 2001) (listing Seventh Circuit cases rejecting spillover as grounds for severance). That the jury will hear evidence against different, non-conspiratorial defendants involved in completely different incidents in and of itself is not grounds for severance. As noted above, when these risks are present, "less drastic measures [than severance], such as limiting instructions, often will suffice to cure any risk of prejudice." *Zafiro*, 506 U.S. at 539.

Here, a limiting instruction can ameliorate any potential undue prejudice arising from a joint jury trial. The evidence in this case, as proffered by the Government, is not so voluminous and complex that it will be impossible for the jury to separate it as relates to each Defendant's

innocence or guilt.  Unlike the multiple defendant cases where severance may be appropriate, only three defendants are charged in the Indictment.  *See United States v. Gaviria*, 116 F.3d 1498, 1533 (D.C. Cir. 1997) (noting that a low number of defendants and the existence of recordings minimize the risk of juror confusion); *United States v. Alessi*, 639 F.2d 466, 475 (2d Cir. 1980) (holding that the number of defendants (ten) "was sufficiently small to enable the jury to give individual consideration to each").  Here, the charges are clear and distinct and there is video evidence relating to each charged offense.  Under these circumstances, a jury is more than capable of evaluating the evidence as to each incident – and each Defendant – independently.

Finally, judicial economy favors joint trials, especially here, where the evidence in Counts One through Four require testimony from the same witnesses.  A joint trial will reduce not only the expenditure of judicial, prosecutorial and defense attorney time, but it will ensure that witnesses need not testify at multiple trials.  As argued by the Government, the public interest in minimizing undue burdens to the Court, jurors, counsel, and witnesses is especially acute given the current COVID-19 pandemic.  (Filing No. 58 at 9.)

The Court acknowledges that it "has a continuing duty at all stages of the trial to grant a severance if prejudice does appear." *United States v. Johnson*, 478 F.2d 1129, 1132 (5th Cir. 1973) (quoting *Schaffer v. United States*, 362 U.S. 511, 516 (1960)).  But at this stage of the proceedings, severance is not warranted and the Motion to Sever is **denied**.

### IV.  <u>CONCLUSION</u>

For the reasons stated above, Gibson's Motion to Sever (Filing No. 55) is **DENIED**.

**SO ORDERED.**

Date:  11/10/2020

                                               Hon. Tanya Walton Pratt, Judge
                                               United States District Court
                                               Southern District of Indiana

DISTRIBUTION:

David Oscar Markus
MARKUS/MOSS PLLC
dmarkus@markuslaw.com

Katherine Gray DeVar
U.S. DEPARTMENT OF JUSTICE
katherine.devar@usdoj.gov

Mary J. Hahn
U.S. DEPARTMENT OF JUSTICE
mary.hahn@usdoj.gov

Nicholas J. Linder
UNITED STATES ATTORNEY'S OFFICE
nick.linder@usdoj.gov